# UNITED STATES DISTRICT COURT
## For the Northern District of Illinois –
## Eastern Division

| | |
|---|---|
| **Jacqueline Stevens** ) | |
| Plaintiff, ) | |
| v. ) | Case No.: |
| ) | |
| **United States Immigration and Customs** ) | |
| **Enforcement and United States** ) | |
| **Department Of Homeland Security** ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE FREEDOM OF INFORMATION ACT

1. This is an action under the Freedom of Information Act, ("FOIA") 5 U.S.C. § 552, seeking wrongfully withheld agency records relating to conditions of detention and medical treatment of individuals held in detention by U.S. Immigration and Customs Enforcement ("ICE") and U.S. Department of Homeland Security ("DHS"). This complaint also seeks a declaratory and injunctive relief to remedy Defendant ICE's pattern and practice of systemic violations of FOIA which includes: (1) failure to make determinations concerning FOIA requests within the mandated statutory time periods; (2) failure to conduct proper searches to locate documents responsive to FOIA requests; (3) failure to segregate non-exempt material in records to which ICE had applied redactions; and (4) failure to allocate sufficient resources to address its ever growing FOIA backlog.

2. Plaintiff Stevens has been irreparably harmed by Defendants' repeated and deliberate violations of the Act: she needs the withheld records for her scholarship and journalism analyzing professional and criminal misconduct in government agencies and corporations that implement policies on behalf of U.S. national sovereignty.

**Jurisdiction and Venue**

3.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 522(a)(4)(B). This Court has further jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §2201-2202.

4.   Venue is proper under 5 U.S.C. § 552(a)(4)(B) because Plaintiff Stevens resides within this District.

**Parties**

5.   Plaintiff is a professor of political science and the director of the Deportation Research Clinic at Northwestern University, in Cook County, Illinois. Stevens' office and principal residence are in Cook County, Illinois.

6.   In 2011, Stevens published a scholarly article in the *Virginia Journal of Social Policy & the Law* detailing the U.S. government's unlawful detention and deportation of U.S. citizens. The article estimated that from 2003 to 2010, "more than 20,000 U.S. Citizens were detained or deported," and identified as the cause, "laws and regulations mandating detention and deportation of hundreds of thousands of incarcerated people without attorneys."[1] This article was featured in several publications and drew attention to the practice.[2] Stevens also wrote an opinion piece published in the *New York Times* on the issue.[3]

---

[1]Jacqueline Stevens, "U.S Government Unlawfully Detaining and Deporting U.S. Citizens as Aliens," *Virginia Journal of Social Policy & the Law*, Spring, 2011, *available at* http://jacquelinestevens.org/StevensVSP18.32011.pdf .

[2]*New York Times*, "Immigration Crackdown Snares Americans" December, 2011, *available at* http://www.nytimes.com/2011/12/14/us/measures-to-capture-illegal-aliens-nabcitizens.html?pagewanted=all ; Christian Science Monitor, "Deported teen returns to U.S. How many Americans are mistakenly banned" January, 2012, *available at* http://www.csmonitor.com/USA/2012/0107/Deported-teen-returns-to-US.-How-manyAmericans-are-mistakenlybanished .

[3]Jacqueline Stevens, "Citizenship to Go," *New York Times* May, 2012, *available at* http://www.nytimes.com/2012/05/18/opinion/citizenship-to-go.html .

7.   Since 2011, Stevens has continued to research, investigate and publish on the subject of

deportation of U.S. Citizens. In 2012, she founded the Deportation Research Clinic for the

purpose of studying government misconduct in deportation proceedings.[4] In 2013 she was

awarded a Guggenheim fellowship to support her research on the deportation of U.S. citizens.[5]

In 2017 her co-edited book *Citizenship in Question: Evidentiary Birthright and Statelessness* was

published by Duke University Press.  Duke sold the copyright to a non-profit librarian-run

consortium Knowledge Unlatched through which the collection is available worldwide at no

cost.[6] Stevens' contribution was awarded "Best Chapter" of 2017 by the Citizenship and

Migration Section of the American Political Science Association.[7]  Many of the cases she studied

have become lawsuits on behalf of the detained U.S. citizens, and have been widely reported.[8]

8.   Stevens' past publications using documents obtained under the FOIA have been used to

draw national attention to secret ICE detention facilities in unmarked office parks and urban

---

[4] Jacqueline Stevens, "Forensic Intelligence and the Deportation Research Clinic: Toward a New Paradigm," Perspectives on Politics, September, 2015, *available at* https://www.cambridge.org/core/journals/perspectives-on-politics/article/forensic-intelligenceand-the-deportation-research-clinic-toward-a-newparadigm/0ABA0DEA34330E5F755A628FAB0C5CCB

[5] Guggenheim Fellow announcement, 2013, https://www.gf.org/fellows/all-fellows/jacqueline-stevens/.

[6] *Citizenship in Question* (2017), http://library.oapen.org/handle/20.500.12657/31762.

[7]  Best Chapter Award,  https://www.apsanet.org/MEMBERSHIP/Organized-Sections/Organized-Section-Awards/Section-43#chapter.

[8] *See, e.g.,* William Finnigan, "The Deportation Machine," *New Yorker*, April 29, 2013, https://www.newyorker.com/magazine/2013/04/29/the-deportation-machine;  Mary Sanchez, "How Broken is Our System? We Deport Citizens," June 9, 2015, https://www.chicagotribune.com/columns/sns-201506091930—tms--msanchezctnms-a20150609-20150609-column.html; NPR, "You Say You're An American, But What If You Had to Prove it or be Deported?" December, 2016 *available at* http://www.npr.org/sections/thetwoway/2016/12/22/504031635/you-say-you-re-an-american-but-what-if-you-had-to-prove-it-or-bedeported; *States Without Nations* blogpost, *available at* http://stateswithoutnations.blogspot.com/2016/02/how-many-us-attorneys-and-assistant.html; *NPR* "In Rush to Deport, Expelling U.S. citizens" http://www.npr.org/2011/10/24/141500145/in-the-rush-to-deport-expelling-u-s-citizens;

buildings, the unlawful detention and deportation of U.S. citizens as aliens, migrant children misidentified as adults based on dental radiographs, and major violations by private prisons of state employment laws and the Trafficking Victims Protection Act, including forced labor.[9] In addition to scholarship and media coverage, the FOIA records she obtained and analyzed has become the basis for litigation.[10]

9. Stevens has spent years researching conditions of detention in ICE detention facilities, working to identify systemic protocols and misconduct underlying the deportation of U.S. Citizens and the violation of civil and constitutional rights of those detained. A primary tool in her research efforts has been obtaining and reviewing U.S. government documents pursuant to FOIA requests.

10. Under the new administration, government misconduct in deportation proceedings has generated additional media and Congressional attention to ICE policies and procedures, including those surrounding the deportation of U.S. Citizens.[11] ICE's response has been to

---

[9] *See e.g.,* Nadia Reiman, "My Very Unhappy Birthday," This American Life, https://www.thisamericanlife.org/679/save-the-girl/act-one-6; On the prison litigation; Jacqueline Stevens, "When Migrants are Treated Like Slaves," *New York Times* (April 4, 2018) https://www.nytimes.com/2018/04/04/opinion/migrants-detention-forced-labor.html; Jacqueline Stevens, *Citizenship In Question: Evidentiary Birthright and Citizenship,* "The Alien Who is a Citizen" (2017); Jacqueline Stevens, "One Dollar Per Day: The Slaving Wages of Immigration Jail, 1942 to Present," *Georgetown Immigration Law Journal* (2015);

[10] *See Gonzalez v. CORECIVIC, Inc.,* case no: 1:18-cv-00169 (filed 2/22/2018); *Barrientos, et al. v. CORECIVIC, Inc.,* case no: 4:18-cv-00070-CDL (filed 4/17/2018); *Raul Novoa, et al v. The GEO Group, Inc.,* case no: 5:17-cv-02514 (filed 12/20/2017); *Chao Chen v. The GEO Group, Inc.,* case no. 3:17-cv-05769 (filed 9/26/2017); *State of Washington v. The GEO Group, Inc.,* case no. 17-2-11422 (09/20/2017); *Alejandro Menocal et al. v. GEO Group, Inc.,* case no. 1-14-cv-02887 (filed 10/21/2014)); *Sylvester Owino and Jonathan Gomez et al. v. CoreCivic,* case no. 3:17-cv-01112-jls-nls (filed 05/31/2017).

[11] *See* Tom Hals, "U.S. to ramp up rapid deportations with sweeping new rule," Reuters, July 22, 2019, https://www.reuters.com/article/us-usa-immigration-deportation/us-to-ramp-up-rapid-deportations-with-sweeping-new-rule-idUSKCN1UH275; *The Daily Beast,* "American Citizen Trapped in ICE Jail" March, 2017, http://www.thedailybeast.com/articles/2017/03/31/american-citizen-trapped-in-ice-jail.html; Prison Legal News, "Ignorance, Bureaucracy and Red Tape:

further decrease transparency, leaving FOIA as the primary tool for researchers and journalists to uncover changes in policy and practice and abuses by the agency.

11. Defendant ICE is an executive agency of the United States government and is principally responsible for enforcing federal immigration laws. ICE is an agency within the meaning of 5 U.S.C. § 522(f)(1). ICE is an agency within the U.S. Department of Homeland Security ("DHS").

12. ICE has custody, possession, and control over the records sought by Stevens under the Act, and ICE had such custody, possession, and control at the time the records were requested.

13. The U.S. Department of Homeland Security ("DHS") is a cabinet department of the United States federal government and an executive agency with the primary mission of securing the United States. DHS is an agency within the meaning of 5 U.S.C. § 522(f)(1).

14. DHS may have custody, possession, and control over some of the records sought by Stevens under the Act, and DHS may have had such custody, possession, and control at the time the records were requested.

**FOIA Requests**

**Request no. 1 – Subfield office locations**

15. On August 6, 2018, Stevens submitted a request to ICE for the following, pursuant to FOIA:

> 1) A list of all ICE Enforcement and Removal Field and Subfield offices by control city, including the complete phone numbers and addresses of these offices in the United States

---

U.S. Citizens Mistakenly Deported" April, 2017, https://www.prisonlegalnews.org/news/2017/apr/3/ignorancebureaucracy-and-red-tape-us-citizens-mistakenly-deported/; Asbury Park Press, "How ICE Can Detain U.S. Citizens," March, 2017, http://www.app.com/story/news/local/publicsafety/2017/03/23/immigration-know-your-rights-trump-freehold/99459216/. Stevens in 2020 assisted the Government Accountability Office in its research for a report being prepared at the request of Rep. Jerry Nadler (D-NY), Chair, House Judiciary.

and abroad and information on holding cells in these locations, as well as the number of unique individuals in custody at that location between Monday, July 30 and August 5, 2018. Please include as well all locations at which individuals were held for more than 24 hours and the dates on which that occurred between January 1, 2016 and the day of the release of information.

2) Please include the Excel spreadsheet and screen shots of the data base interface used to produce the search results.

3) A list of addresses for locations listed as "unavailable" in the release to the NIJC of 11/6/2017 (https://immigrantjustice.org/sites/default/files/uploaded-files/no-content-type/2018-06/ICE_Facility_List_11-06-2017-web.xlsx).

16. On September 5, 2018, the ICE FOIA Office sent an email to Stevens referencing **2018-ICFO-56530 as the case number assigned to the request** and stating as follows:

> In conducting a search for responsive records, the ICE FOIA office has determined that further clarification is needed regarding your request. Please describe what you mean by "information on holding cells" and "unique individuals in custody at that location." Please provide the ICE FOIA office with a response as soon as possible to avoid any further delay in the processing of your request. If a response is not received within 30 days, your request will be administratively closed.

17. This inquiry is evidence of ICE's pattern and practice of triggering unwarranted and unjustified delays within the FOIA determination process. There is no lawful basis for tolling the 20 days imposed by Congress for responding to this and other requests.

18. On September 5, 2018, within the hour of ICE sending their inquiry, Stevens clarified both points of professed confusion by stating the following:

> 1) "Holding cells" is the term of art used by ICE and federal courts to refer to areas where people arrested by ICE or other components of DHS are held. Hence the name "holding cells." e.g., here is a reference in an ICE document to "holding cells."
> https://www.ice.gov/doclib/foia/prea_audit/losAngelesStagingFacilityMar14_15_2017.pdf (Just use control/f.) You can find dozens more references on your own website, if you go to ice.gov and type "holding cells" into the search box. Please see this reference as well from an ICE spokesperson.
> https://www.kansas.com/news/business/bizcolumnsblogs/carrie-rengers/article1114192.html.

> 2) Per the American Heritage Dictionary, A "unique individual" is one distinguishable human being. ICE maintains data on this, and I included a link to this data.

19. On September 10, 2018, Stevens checked the status of the request on the FOIA online tracking platform. The platform reported the status of her request was "On Hold - Other". To address this, Stevens sent an email to the ICE FOIA Office stating the following:

> Can you please advise as to the estimated date of completion, insofar as the agency has gone beyond the time allowed by statute? I am not sure about the nature of this delay. The information I am seeking is any description of the facility holding people, i.e., the square feet, availability of a toilet, security, access to visitors. And I want to know how many people are held in these facilities in a particular time frame, per my request.

20. The email went unanswered by ICE.

21. On March 15, 2019, ICE issued a "final response" to Stevens request, stating that the search of the ICE Office of Enforcement and Removal Operations (ERO) for records produced one spreadsheet responsive to her request.

22. On May 1, 2019, Stevens appealed the determination as the production was not a responsive document as contemplated by FOIA; the response included only the city locations of the offices and omitted the full addresses and phone numbers of the locations as well as other information responsive to her request, while the cover letter included no legal grounds for this omission.

23. On May 20, 2019, the Government Information Law Division of DHS sent Plaintiff a letter claiming to have received the appeal on May 20, 2019 and assigning it case number 2019-ICAP-00377.

24. In a letter dated June 18, 2019, ICE issued a response summarizing the appeal tracked as **2019-ICAP-00377** and then stating: "ICE is therefore remanding your appeal to the ICE FOIA

Office for the completion of processing, including tasking to the appropriate agency/office(s) to obtain any responsive documents, and a direct response to you."

25. As of May 1, 2020, 318 business days have lapsed since the appeal was remanded but Plaintiff's request has not been completed.

**Request No. 2 – Lauren Underwood and Electronic Health Records**

26. On November 22, 2019, Stevens submitted to the Department of Homeland Security through an online portal a request for the following information:

> 1) all communications and related materials created, received, or maintained by the Department of Homeland Security to which Rep. Lauren Underwood(D-IL) or any member of her staff were a party. This includes but is not limited to all email, text messages, notes, reports, memorandums, proposed bill texts, and bill evaluations. In a floor speech of 9/26/2019 Rep. Underwood stated she received information from the "Department of Homeland Security" indicating a request for an integrated Electronic Health Records System she referenced as "EHR." She refers to this in her remarks on HR 3525 as a "direct ask from medical officers at the Department of Homeland Security."

> 2) DHS communications and related materials created by or received from other components of DHS or the Department of Health and Human Services Office of Refugee Resettlement about the use of Electronic Health Records systems already in place as well as the establishment of an EHR for the use by offices of CBP.

> 3) Information on meetings and communications with private individuals, including but not
> limited to lobbyists or company officials related to past, current, or potential "enterprise" or other information technologies for collecting, coordinating, or maintaining health records data for those encountered or detained by DHS or any component of DHS. Technical reports, email, text messages, or other communications with the private sector tied to past, current, or potential contracts tied to EHR systems.

> The time frame of this request is January 1, 2017 to the present, by which I mean the date a search is initiated by the tasked component.[12]

---

[12]Stevens co-authored, "Democratic Representative Pushed to Create a Massive Migrant Health Database that No One Wants," *The Intercept*, Jan. 4, 2020,https://theinter-cept.com/2020/01/04/border-patrol-cbp-migrant-health-database. She seeks these records for her ongoing investigations of government corruption.

27. On December 2, 2019 Stevens received by email letter from DHS restating her request and assigning it case number **2020-HQFO-00215**. The letter, signed by James Holzer, Deputy Chief Privacy Officer, Deputy Chief  FOIA Officer, DHS, stated:

> Due to the subject matter of your request, I am transferring this request to the FOIA Officers for United States Immigration and Customs Enforcement (ICE), and U.S. Customs and Border Protection (CBP), for processing under the FOIA and direct response to you.

28. On January 22, 2020, Stevens received an email referencing her FOIA request with a new tracking number: **2020-ICFO-18634**. The correspondence stated in relevant part as fallows:

> we determined that your request is too broad in scope, did not specifically identify the records which you are seeking, or only posed questions to the agency.  Records must be described in reasonably sufficient detail to enable government employees who are familiar with the subject area to locate records without placing an unreasonable burden upon the agency.... Please resubmit your request containing a reasonable description of the records you are seeking.  Upon receipt of a perfected request, you will be advised as to the status of your request. If we do not hear from you within 30 days from the date of this letter, we will assume you are no longer interested in this FOIA request, and the case will be administratively closed. Please be advised that this action is not a denial of your request and will not preclude you from filing other requests in the future.

29.  That same day, January 22, 2020, Stevens replied: "This is a very specific description of the records I am seeking. Please produce the responsive documents immediately; the response time already has exceeded the statutory limit."

30. Stevens received no further reply.

31. Plaintiff attempted repeatedly to contact ICE via the phone number provided. On January 23, 2020, she sent the following email to ice-foia@dhs.gov with subject line *2020-ICFO-18634 and problem with ICE telephonic service, in violation of the FOIA statute*:

> To whom it may concern, Over the past seven months, including today, I have attempted to contact this office over the phone. So far, I have been unable to do either, as my calls are dropped each time. When I call the number provided both on the cover letter of the FOIA response and on your .gov website for the ICE/FOIA PA headquarters office (866-633-1182), I am directed to press 1 (for english), press 3 (for questions regarding my FOIA case), and hold as I am transferred to two different lines until the call is dropped. This has happened on

previous occasions, indicating the problem seems to be systematic. I would very much appreciate a response to this email as soon as possible 1) explaining why I cannot get in contact over the phone; 2) providing a responsive phone number for me to contact; and 3) providing me immediate response to the email I sent yesterday re: 2020-ICFO-18634 and ICE's unlawful refusal even to initiate a search for a legally valid request in the statutory time frame much less produce responsive documents. I am trying to clear this up with the agency to avoid the need to bring another lawsuit against ICE and needless waste taxpayer and judicial resources. Please let me know if ICE will be conducting the search. If not I will be forced to include this case in my upcoming FOIA complaint. Thank you, Jackie."

32. Stevens received no documents and no further communication from Defendant regarding this properly submitted FOIA request.

33. As of May 1, 2020, **107** days have lapsed since Stevens submitted her request.

**Request No. 3 – Butler County Jail**

34. On March 25, 2019, Stevens submitted a FOIA request for the following information:

> All documents ICE has referencing the Butler County Jail work program for detainees, including but not limited to documents with the language about porters Chief Dwyer stated he had personally read in an IGSA, as well as all other correspondence about the Butler County's use of people held under immigration law to perform work in and around the facility. People likely to have or have access to responsive documents include but are not limited to Tae Johnson and Kevin Landy.

> All formal and informal compliance reports and follow-up correspondence, including but not limited to email, attachments, grievances or complaints, and contract addenda for Butler County, in particular associated with the deficiencies noted in the reports.

> All data tracking the length of time people are held in the Butler County facility; if there is a db with the number of days/alien please send me an output from that db with the individually identifying information redacted but including the date of arrival and transfer from the facility, as well as the status of the case at the time of transfer, i.e., VD, removal, termination, transfer to another ICE facility. The date for this request is April 11, 2014 through the time documents are submitted from the component to the ICE FOIA office for redaction or the time frame when the documents are produced in litigation, whichever is most contemporary to their production to me.

35. On April 8, 2019, ICE responded via email confirming receipt of the request and assigning it tracking number **2019-ICFO-33429**. Defendant invoked a 10-day extension of the

mandated FOIA response period due to the fact that Stevens request "seeks numerous documents that will necessitate a thorough and wide-ranging search."

36. On August 16, 2019, a research assistant working under the supervision of Plaintiff checked the status of the request on the DHS FOIA status website. The platform reported that the request's status as "Request for Docs Sent."

37. Plaintiff has received no responsive documents for Defendant.

38. As of May 1, 2020, **267** business days have lapsed since ICE acknowledged receipt of the request on April 8, 2019.

**Request No. 4: Kenosha Jail**

39. On January 16, 2019, Stevens submitted the following FOIA request to Defendant:

> for the following maintained, received, or required to be produced by ICE related to health care services at the Kenosha County, WI jail for individuals held under immigration laws. The component most likely to have responsive records is the ICE Health Service Corps, though contract and civil rights monitoring components of ICE also are likely locations for such records.
>
> 1. All contracts and associated attachments, memorandums of understanding, email, and all other items associated with the submission; acceptance, and review of detainee health with Kenosha County, WI for health care provided to people held under immigration laws.
>
> 2. All logs of grievances (oral and written) submitted by people detained at the Kenosha County facility.
>
> 3. All medical expense reports submitted to ICE for the Kenosha County facility.
>
> 4. All reviews and reports on health care services provided to people held under immigration laws at the Kenosha County facility, including regular reports, ad hoc reports, and those based on specific grievances or complaints generated by any source.
>
> 5. All reports of hunger strikes.
>
> 6. All reports of hospitalization outside of the Kenosha County facility for people held under immigration laws by Hudson County. The time frame of this request is January 1, 2015 to the present.

Databases that may have information responsive to this request include but are not limited to: CaseTrakker, MedEZ, Dental XRay System, Criminal Institution Pharmacy System, Medical Payment Authorization Request Web System (MedPAR) and Medical Classification Database.

40. On February 26, 2019, Stevens received a tracking number for the request: **2019-ICFO-2917**.

41. On June 10, 2019, Stevens received a "final response" of just 15 pages.

42. On August 16, 2019, Stevens appealed the response, stating in part:

I noted in my request that the component most likely to have responsive records is the ICE Health Service Corps, though contract and civil rights monitoring components of ICE also are likely locations for such records. It was assigned case no 2019-ICFO-29171. I write here to appeal the "final response," received on June 10, 2019.

The June 10 response claims to have found 15 pages responsive to my request. However, it is missing a number of responsive documents. These include but are not limited to: all contracts and associated attachments, memorandums of understanding, email, and all other items associated with the submission, acceptance, and review of detainee health with Kenosha County, WI for health care provided to people held under immigration laws, all logs of grievances (oral and written) submitted by people detained at the Kenosha County facility, all reports of hunger strikes, and all reports of hospitalization outside of the Kenosha County facility for people held under immigration laws by Hudson County [sic].

Upon information and belief your agency does in fact possess documents enumerated above, I would appreciate it if you would produce records responsive to my request as soon as possible or state legal reasons for not producing it.

43. On September 26, 2019 Defendant asserted that the appeal was received on August 29, 2019 and assigned it case number **2019-ICAP-00567**. The letter stated in part:

Please note the contract between ICE and Kenosha County specifically pertains to detention and/or transportation services, not medical services. ICE does not maintain records regarding medical services for detention centers that are not Service Processing Centers. Therefore, in order to receive records that are responsive to the portions of your request pertaining to medical services, you should submit a request directly to the Kenosha County detention facility.

With that said, however, and upon a complete review of the administrative record and the search documentation, ICE has determined that a new search(s), or

modifications to the existing search(s), could be made specifically pertaining to those portions of your request that do not seek medical service records. ICE is therefore remanding your appeal to the ICE FOIA Office for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive records.

44. As of May 1, 2020, **147** business days have lapsed since the appeal was remanded but

Plaintiff's request has not been completed and no additional documents have been received.

**Request No. 5 – Jail Services Costs Statements**

45. On August 23, 2018, Stevens submitted a request via email to ICE for the following

information:

A. The most recent Jail Services Costs Statement (JSCS) for the following facilities ICE uses to hold people under immigration laws:
      1) the Berks County Residential Center, Berks County, PA;
      2) South Texas Family Residential Center, Dilley, TX;
      3) Hudson County Jail, Hudson County, NJ;
      4) Stewart County, GA, (CoreCivic);
      5) Aurora, Colorado (GEO)
      6) Tacoma, WA (GEO)
      7) Otay Mesa, CA (CoreCivic)
      8) Eloy, EZ (CoreCivic)
      9) Pinal County Jail, AZ
      10) Otero County Processing Center, NM (MTC)
      11) Joe Corley Detention Facility, Conroe TX (GEO)
      12) Houston, TX (CoreCivic on Export Drive)
      13) IAH, Secure Adult Detention Center (MTC) (Livingstone, TX)
      14) LaSalle, LA

B. Memorandum from Michael J. Davidson, Chief, CALD, OPLA, ICE to William C. Randolph, Director and Head of Contracting Activity, OAQ, ICE, Funding Intergovernmental Service Agreements (Feb. 7, 2013).

C. All information in any medium including but but (sic) not limited to e-mail, text messages, reports, contracts, memoranda, letters, or faxes signed by, from, to OR about Charlie Dent, John McCormack, Eric Ruth, Matthew Lerch, Judith Kraine, Mark Baldwin, William Dennis, Thomas Gajewski, Judith Schwank, Mark Scott in ICE components that handle Berks County, PA ICE Intergovernmental Service Agreements (IGSAs) and not responsive to previous requests. This means any document under ICE control associated with detention or removal operations, facility leases, purchases, sales, or services rendered in Berks County, PA that references any of the individuals listed above is responsive to this request. Please make sure to inquire of any ICE component responsible for any negotiations with Berks County. The time frame of this request is

2000 to the present. The most likely location of records responsive to this request are offices responsible for the Berks County, PA operations, contracts, and reviews, including but not limited to litigation for that facility. In particular, there should be communications in 2006 about ICE-contracted facility firings based on allegations of unlawful actions. Components within ICE that are alerted about misconduct or possible litigation should be searched for responsive records.

D. All grievance logs and grievances for Berks County, PA, Hudson County, NJ, and Otero County Processing Center, January 1, 2010 to present (Names and other Personally Identifying information is of course exempt and may be redacted.)

E. All Jail Services Costs Statements for Berks County Family Facility and Hudson County, NJ 2001 to present.'

F. Since January 1, 1999, the earliest first 100 pages of documents associated with the IGSA for:
> 1. Berks County, PA
> 2. Hudson County, NJ

For "F" please request documents of the component of ICE predecessor INS that would initiate discussions of IGSAs for the purposes of holding people under immigration laws.

I am seeking the first information referencing these county governments as suitable detention locations by an INS component in any medium, including but not limited to emails, letters, proposals, memorandums, or reports.

G. All Evaluations associated with contracts for facilities below, including technical and performance evaluations by the Contracting Officers and ICE Detention Planning and Acquisition Unit and ongoing performance and renewals by contract officers EXCEPT Inspector reports. The time frame for this request is January 1, 2000 or the first year of the facility's submission of the JCSC through the present.
> 1) the Berks County Residential Center, Berks County, PA;
> 2) South Texas Family Residential Center, Dilley, TX;
> 3) Hudson County Jail, Hudson County, NJ;
> 4) Stewart County, GA, (CoreCivic);
> 5) Aurora, Colorado (GEO)
> 6) Tacoma, WA (GEO)
> 7) Otay Mesa, CA (CoreCivic)
> 8) Eloy, EZ (CoreCivic)
> 9) Pinal County Jail, AZ
> 10) Otero County Processing Center, NM (MTC)
> 11) Joe Corley Detention Facility, Conroe TX (GEO)
> 12) Houston, TX (CoreCivic on Export Drive)
> 13) IAH, Secure Adult Detention Center (MTC) (Livingstone, TX)
> 14) LaSalle, LA

H. Evaluations of JCSCs by Contracting Officers and ICE Detention Planning and Acquisition Unit for all detention contracts since January 1, 2008.

I. Evaluations of the FIRST JCSCs by Contracting Officers and ICE Detention Planning and Acquisition Units (or their predecessors) for all currently operating ICE/INS detention facilities except as covered by (H).

46. On September 5, 2018, ICE sent Stevens an acknowledgement for her request and assigned it reference number **2018-ICFO-59138**.

47. On October 25, 2018, ICE sent a "final response" letter stating the following:

ICE has conducted a search of the ICE Office of Enforcement and Removal Operations (ERO) and the ICE Office of Acquisitions (OAQ) for records responsive to your request and no records were found.

48. On October 31, 2018, Stevens submitted a timely appeal from the October 25, 2018 determination challenging the adequacy of the search.

49. On November 26, 2018, the Government Information Law Division of DHS sent a letter to Plaintiff claiming to have received the appeal on November 23, 2018. The letter acknowledged the appeal and assigned it case number **2019-ICAP-00109**.

50. On February 19, 2019, ICE issued a "final response" via email, stating the following:

Upon a complete review of the administrative record, ICE has determined that new search(s) or modifications to the existing search(s), could be made. Therefore, ICE is remanding your request to the ICE FOIA Office for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive documents.

51. On February 7, 2020 ICE sent Stevens by electronic mail a cover letter signed by Catrina M. Pavlik-Keenan and one document responsive to Plaintiff's request which consists of a seven-page memorandum dated February 7, 2013. Six of the seven pages were redacted in their entirety save the words "IGSA Funding" in the header. The only exemption cited is b(5).

52. The cover letter from Ms. Pavlik-Keenan, dated February 4, 2019, states: "After review of the documents on remand, I have determined that portions of documents will be withheld

pursuant to exemptions of the FOIA as described below. The letter invoked exemption 5, 6, 7(c). Pavlik-Keenan does not state how the search was conducted, nor the total number of records responsive to the request that were withheld.

**Request No. 6 -Hudson County Jail**

53. On December 16, 2018, Stevens submitted a FOIA request seeking all items maintained, received, or required to be produced by ICE related to health care services at the Hudson County jail for individuals held under immigration laws, including:

> All contracts and associated attachments, memorandums of understanding, e-mail, and all other items associated with the submission, acceptance, and review of the CFG Health Systems, LLC, contracts with Hudson County for health care provided to people held under immigration laws.

> All logs of grievances (oral and written) submitted by people detained at the Hudson County facility.

> All medical expense reports submitted to ICE, including via Hudson County.

> All reviews and reports on health care services provided to people held under immigration laws at the Hudson County facility, including regular reports, ad hoc reports, and those based on specific grievances or complaints generated by any source.

> All reports of hunger strikes.

> All reports of hospitalization outside of the Hudson County facility for people held under immigration laws by Hudson County.

54. On December 17, 2018, ICE sent Stevens a confirmation receipt for her request and assigned it tracking number **2019-ICFO-24680**.

55. On February 27, 2019, a research assistant looked up the status of the request on the FOIA online platform. The system reported that "There is no FOIA request in the system for that number."

56. On July 5, 2019, a research assistant checked the platform again, and the system reported that the status is "request for docs sent" with an estimated delivery date as February 22, 2019.

57. On September 18, 2019, Stevens received by electronic mail a cover letter signed by Catrina M. Pavlik-Keenan and production of six pages plus an Excel spread sheet.

58. On or about October 3, 2019 Stevens sent ICE an appeal of the response and indicated it was her belief that numerous documents responsive to her request had not been produced.

59. On November 4, 2019, ICE indicated that it had received the appeal on November 4, 2019 and assigned it tracking number **2020-ICAP-00063**.

60. On December 4, 2019, Stevens received by electronic mail a letter with the same date signed by Shiraz Panthaky, Chief Government Information Law Division. The letter states in part: "Upon a complete review of the administrative record, ICE has determined that a new search(s) or modifications to the existing search(s), could be made. Therefore, ICE is remanding your request to the ICE FOIA Office for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive records, should they exist."

61. Plaintiff has received no additional records after remand.

62. As of May 1, 2020, **101** business days have lapsed since the appeal was remanded but Plaintiff's request has not been completed.

63. Plaintiff has exhausted all available administrative remedies.

**Claims for Relief**

**Count I – Violation of FOIA**

64. All previous paragraphs are incorporated as though fully set forth herein.

65. Plaintiff has a statutory right under the Act to obtain the agency records properly requested in her six requests identified above.

66. No legal basis exists for Defendants DHS and ICE's failure to promptly docket, process, respond, and produce responsive agency records in accordance with the timing and other requirements of the Act.

67. DHS and ICE's failure to disclose all responsive agency records in connection with Stevens' six requests identified above, as well as its failure to (1) docket and process Stevens' 22 November, 2019 request for records [Request No. 2]; (2) timely respond to her March 25, 2019 [Request No. 3] and 22 November, 2019 [Request No. 2] requests; (3) process on remand and respond to the August 6, 2018 [Request No. 1], January 19, 2019 [Request No. 4], and December 16, 2018 [Request No. 6], requests; (4) provide a legally sufficient appellate response to Request Nos. 2 and 5; and (5) conduct proper searches to locate documents responsive to the six FOIA requests, each violate the Act, as well as regulations promulgated by DHS.

68. As of the date of this Complaint, Defendants has failed to produce all records requested by Plaintiff in her six FOIA requests or to demonstrate that such records are lawfully exempt from production. *See* 5 U.S.C. § 552(a)(6)(C). Nor have Defendants notified Plaintiff of the scope of any responsive records it intends to produce or withhold and the reasons for any withholdings, nor informed Plaintiff that it may appeal any specific, adverse determination.

69. By failing to timely process and respond to Plaintiff's requests within the statutorily prescribed time limits, Defendants have violated their respective duties under the FOIA, including but not limited to their duties to conduct a reasonable search for responsive records and to produce all responsive, reasonably segregable, non-exempt information. Therefore, Defendants are unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. § 552.

70. Plaintiff is being irreparably harmed by reason of Defendants' unlawful withholding of records responsive to Plaintiff's FOIA requests and their failure to comply with their respective

obligations under FOIA, and Plaintiff will continue to be irreparably harmed unless Defendants are compelled to conform its conduct to the requirements of the law.

**Count II – Declaratory and Injunctive Relief against ICE**

71. Plaintiff re-alleges and incorporates paragraphs 1 through 60.

72. Defendant ICE has a mandatory statutory duty under 5 U.S.C. § 552(a)(3) to conduct a reasonable search for records responsive to FOIA requests and to make a determination on each request within the time period set forth in 5 U.S.C. § 552(a)(6): 20 business days, to be extended by no more than 10 business days in the event that the agency notifies the requester in writing of the existence of "unusual circumstances." 5 U.S.C. § 522(a)(6)(B)(i)

73. ICE has failed to make determinations on Plaintiff's FOIA requests, appeals, and remands within the timeframes required by statute. Defendant's failures are part of a pattern and practice of such deliberate violations of FOIA. Exceptional circumstances do not justify ICE's delay in processing FOIA requests.

74. ICE has failed to allocate sufficient resources to address its FOIA backlog, including allocating sufficient budgetary and personnel resources to comply with the timeframes imposed by the Act.

75. Defendant's backlog demonstrates the existence of a pattern and practice of deliberate and repeated failures to make timely determinations on FOIA requests, process appeals, and promptly produce responsive records within the statutory time periods and in good faith.

76. Defendant also routinely fails to conduct good faith searches for records and redacts information that is not within the scope of to the carefully crafted statutory exceptions. As a result, Defendant is precluding the public from monitoring its actions and performance.

77. No legal ground, justification, or excuse exists for Defendant's nationwide pattern and practice of failing to meet the statutory deadlines with respect to properly submitted FOIA requests and to discharge its statutory duties in good faith.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that judgment be entered in her favor and against Defendant, and that the Court:

A. Order Defendants and any of their agents or other persons, departments, or components acting for, with, by, through, or under them, to conduct a prompt, reasonable search for records responsive to Plaintiff's requests ;

B. Permanently enjoin and restrain Defendants and any of Defendants' agents or other persons, departments, or components acting for, with, by, through, or under them from withholding the agency records at issue in this case;

C. Declare that the requested records by Plaintiff are not exempt from disclosure under FOIA, and order Defendant with custody of the records to disclose the requested records in their entirety and make copies available to the Plaintiff;

D. Declare that Defendant ICE's pattern and practice of failing to make determinations on requests within the statutory time frames violate the Act;

E. Declare that Defendant ICE's pattern and practice of failing to make determinations on requests remanded for further processing and promptly notify the requestor of its determinations violate the Act;

F. Award Plaintiff reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and,

G. Award all other relief to Plaintiff that the Court deems just, equitable, and proper.

Respectfully submitted,

_____s/ Nicolette Glazer Esq._____
Nicolette Glazer Esq.
LAW OFFICES OF LARRY R GLAZER
1875 Century Park East #700
Century City,  CA 90067
T: 310-407-5353
F: 310-407-5354
nicolette@glazerandglazer.com
ATTORNEY FOR PLAINTIFF