## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| JACQUELINE STEVENS, | |
| Plaintiff, | |
| v. | Case No. 20-cv-02725 |
| | Judge Mary M. Rowland |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jacqueline Stevens ("Stevens") filed a lawsuit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking to compel disclosure of records relating to various FOIA requests she submitted to Immigration and Customs Enforcement ("ICE"). The parties have filed cross motion for summary judgment. For the reasons stated below, Defendants' motion for summary judgment [75] is denied, and Plaintiff's motion for summary judgment [82] is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts

1

are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

When cross-motions for summary judgment are filed, "[t]he ordinary standards for summary judgment remain unchanged [and] we construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). "Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no

2

material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 Fed. Appx. 92, 95 (7th Cir. 2012).

## BACKGROUND

The Court takes the following facts from Defendants' statement of facts [77], Plaintiff's response and statement of additional facts [83], Defendants' response to Plaintiff's statement of additional facts [85], and Defendants' statement of additional facts [86].

Stevens is a professor of political science at Northwestern University. [77] at ¶ 3; [83], Declaration of Jacqueline Stevens ("Stevens Decl.") at ¶ 1. Stevens is also the director of the Deportation Research Clinic at Northwestern, and her research practice includes regular requests under the FOIA. [83], Stevens Decl. at ¶¶ 1, 4. As part of her research, Stevens submitted six FOIA requests to ICE:

- **Request 56530** (August 6, 2018) requested "[a] list of all ICE Enforcement and Removal Field and Subfield offices by control city" including phone number and address information, as well as "the number of unique individuals in custody at that location between Monday, July 30 and August 5, 2018." [77] at ¶ 9.

- **Request 59138** (August 23, 2018) requested documents related to specific ICE facilities including jail services cost statements, intergovernmental service agreements, grievance logs, and contract evaluations. *Id.* at ¶ 19.

- **Request 24680** (December 2018) requested documents related to the Hudson County jail, including documents related to health care services, contracts, grievances, hunger strikes, and hospitalizations. *Id.* at ¶ 24.

- **Request 29171** (January 2019) requested documents related to the Kenosha County jail, including documents related to health care services, contracts, grievances, hunger strikes, and hospitalizations. *Id.* at ¶ 35.

- **Request 33429** (March 2019) requested documents related to the Butler County jail, including compliance reports, grievances, and data regarding the length of time people are held in the facility. *Id.* at ¶ 43.

- **Request 18634** (November 2019) requested "[a]ll communications and related materials created, received, or maintained by the Department of Homeland Security to which Rep. Lauren Underwood (D-IL) or any member of her staff were a party" including emails, text messages, reports, and memos, as well as communications regarding the use of Electronic Health Records systems. *Id.* at ¶ 55.

ICE states that when it receives a FOIA request, it identifies which of its program offices are reasonably likely to possess responsive records and initiates searches within those offices. [77] at ¶ 5. Each ICE program office has a FOIA point-of-contact who uses their experience and knowledge of the program office's practices and activities to identify individual employees or component offices that are reasonably likely to possess responsive records. *Id.* at ¶ 6. The identified individuals are directed to search file systems that, in their judgment, are reasonably likely to contain responsive records. *Id.* at ¶ 7. The potentially responsive records are then provided to ICE's FOIA office, which reviews the records for responsiveness. *Id.* at ¶ 8.

ICE submitted affidavits from Fernando Pineiro, ICE's FOIA director, detailing the offices ICE surveyed for responsive documents, as well as the file systems and search terms used to search for documents responsive to Stevens' requests. *See* [77] at Ex. A, Declaration of Fernando Pineiro ("Pineiro Decl."); [86] at Ex. D, Supplemental Declaration of Fernando Pineiro ("Pineiro Supp. Decl.").

In response to Stevens' requests, ICE tasked various offices, sub-offices, and units to search for relevant materials. Among other locations, ICE surveyed its

4

Enforcement and Removal Operations office, Office of Acquisition Management, Office of Professional Responsibility, various field offices, the ICE Health Service Corp., its Law Enforcement Systems and Analysis Statistical Tracking Unit, Office of the Chief Information Officer, and Office of Congressional Relations. [77] at ¶¶ 13, 20, 23, 29, 36, 38, 45, 47, 52, 56. Those ICE offices, sub-offices, and units conducted searches in various databases and file repositories including office intranets, the Procurement Request Information System Management database, the Joint Integrity Case Management System, searches of computer files, Outlook searches, office shared drives, the Inspections and Detention Oversight database, Sharepoint sites, the Enforcement Integrated Database, archived emails, and the Electronic Health Records System. *Id.* at ¶¶ 17, 21, 23, 26-27, 30-33, 39, 41, 46-47, 52-53, 56. ICE also provided the search terms used to search for responsive documents. *Id.* at ¶¶ 17, 26-27, 30-33, 38-41, 46-47, 50, 53, 57-58.

ICE ultimately produced more than 12,000 pages of responsive documents to Stevens in response to her six FOIA requests. *Id* at ¶ 60. ICE redacted certain information from its document productions based on certain FOIA exemptions. *Id.* at ¶¶ 61-78. ICE conducted a line-by-line review to identify information exempt from disclosure and whether such exempt information was segregated, and non-exempt information was released. *Id.* at ¶ 77. ICE did not withhold any non-exempt information on the grounds that it was not segregable. *Id.* at ¶ 78.

The parties agreed to evaluate the appropriateness of the redactions of exempt information by reviewing a representative sample of 421 pages out of the more than

12,000 pages ICE produced. [83], Plaintiff's Statement of Additional Facts ("PSAF") at ¶ 14; [85] at ¶ 14. ICE subsequently removed redactions from 137 pages, 32.5% of the 421-page sample. [83], PSAF at ¶ 15; [85] at ¶ 15. The reasons ICE provided for removing the redactions were that the redactions had been made in error, had been made inadvertently, or that ICE was removing the redactions as a matter of discretion. *Id.*

After completing its document productions, ICE moved for summary judgment arguing that it has conducted an adequate search for responsive records and has not improperly withheld any material. [75] [76]. Pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), ICE provided an index detailing the applicable FOIA exemptions for redactions in the 421-page sample agreed to by the parties. *See* [77], Ex. C. Stevens also moved for summary judgment on Count I of her First Amended Complaint, arguing that ICE failed to issue final determinations on her FOIA requests within the statutory timeframe. [82] at 3-5.

## ANALYSIS

### I.    Adequacy of Search

An agency's search for documents is "adequate if it is the result of 'a good faith effort' and is also 'reasonable in light of the request.'" *Stevens v. U.S. Dept. of State*, 20 F.4th 337, 342 (7th Cir. 2021) (quoting *Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 387 (7th Cir. 2015)). Good faith is presumed, and "can be bolstered by evidence of the agency's efforts to satisfy the request." *Id.* Reasonableness "is a flexible and context-dependent standard." *Id.* An agency is

6

entitled to support the adequacy of its searches via "non-conclusory" and "reasonably detailed" affidavits. *Id.* at 343 (citing *Henson v. Dep't of Health & Hum. Servs.*, 892 F.3d 868, 875–76 (7th Cir. 2018)). A sufficiently detailed affidavit sets forth the search terms used, the kind of searches performed, and avers that all files likely to contain responsive information were searched. *Id.* Under FOIA, "the question at summary judgment is not whether the agency might have additional, unidentified responsive documents in its possession" but rather "whether the search itself was performed reasonably and in good faith." *Rubman*, 800 F.3d at 387 (citing *Matter of Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992)).

### A. Good Faith

Stevens has failed to rebut the presumption of good faith. Stevens conflates good faith and reasonableness and argues that the Pineiro declaration is insufficient because the declaration "fails to describe the agency systems of records and ICE's scheme of record keeping." [82] at 6. Stevens argues that this shows both a lack of good faith and that the declaration cannot support the reasonableness of ICE's searches. *Id.*

The Pineiro declaration explains that "ICE records are maintained by leadership offices and within ICE directorates," that ICE individual employees and program offices use various systems to maintain records," and that "ICE employees maintain records in several ways, including storing electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, or USB storage devices." [77], Pineiro Decl. at ¶¶ 40, 43. Despite

Stevens's concerns about the Pineiro declaration's explanation of ICE's record keeping, "FOIA does not compel large, complex agencies such as [ICE] to maintain a specific sort of centralized file system." *Stevens*, 20 F.4th at 343. The Pineiro declaration's explanation of how ICE maintains its records is sufficient.

Despite her assertions that ICE's declaration is lacking, Stevens cites no evidence which would cause the Court to discredit ICE's sworn statements. *See Stevens*, 20 F.4th at 342-43. ICE's declaration documents its extensive, good-faith efforts to comply with Stevens' requests. Its efforts have resulted in ICE producing over 12,000 pages of documents to Stevens. *See e.g.*, [77], Pineiro Decl. "Nothing in this history is incompatible with good faith." *Stevens*, 20 F.4th at 343.

### B. Reasonableness

Stevens also specifically objects to ICE's searches in connection with four of her six requests. Stevens does not specifically challenge the adequacy of ICE's searches for Request 24680 (December 2018) or Request 33429 (March 2019), therefore has waived argument as to the reasonableness of those searches. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("[U]ndeveloped arguments are waived."). For her four remaining requests Stevens argues that ICE did not search enough locations and/or that ICE did not use adequate search terms. *See e.g.*, [82] at 7-11.

### i. Request 56530 (August 6, 2018)

Request 56530 concerns records related to ICE Enforcement and Removal Operations ("ERO") field offices. Stevens objects that ICE did not survey its Office of

Detention Policy and Planning for responsive records, or search certain databases like the Bonds Online System, IDOCX, Enforcement Integrated Database, or the Ice Integrated Decision Support system data warehouse. [82] at 7-9. Stevens also objects that ICE did not use "subfield" as a search term. *Id.* at 7.

Upon receiving Request 56530, ICE followed up with Stevens requesting clarification about the information she was seeking. [77] at ¶ 10. Request 56530 seeks information about ICE's ERO field offices, therefore ICE determined the ERO office would most likely have responsive records. *Id.* at ¶ 13. ICE tasked several units and offices within ERO to search for records, and one such unit identified responsive information while others responded that they did not possess responsive information. *Id.* at ¶¶ 14-15. Stevens administratively appealed after ICE produced the responsive information. *Id.* at ¶ 16. ICE subsequently searched for additional documents, relying on a mission support specialist who, based on his knowledge of the offices' mission, searched the ERO's intranet using the search terms "phone lists" and "field offices." *Id.* at ¶ 17.

The Court finds that ICE's search was adequate. It was reasonable for ICE to task the ERO to search for information about itself. Stevens' speculation that other ICE offices or databases may have the information she seeks, or her speculation that additional search terms would produce different results, is not enough to overcome the reasonableness of the search. *See Rubman*, 800 F.3d at 387.

### ii.    Request 29171 (January 2019)

Request 29171 concerns records related to the Kenosha County jail. Stevens objects that the search terms ICE used are inadequate. Specifically, Stevens argues that a Chicago field office employee used only the search terms "Kenosha," "hunger strike," and "grievance," but failed to use any search terms similar to "medical" or "hospitalization." [82] at 9-10. Stevens also criticizes ICE for not specifying the search terms the Office of Professional Responsibility ("OPR") used to search for responsive documents. *Id.* at 10.

With regard to OPR's search, ICE submitted a supplemental declaration from Pineiro which specifies the search terms OPR used. [86] at ¶ 79; *see id.*, Pineiro Supp. Decl. at ¶ 1. The Court finds that the search terms utilized by OPR, as specified in the supplemental declaration and in light of the overall search efforts described in the original declaration, were reasonable.

However, the Court finds that the search terms used by the Chicago field office were not reasonable. In response to Request 29171, the ERO advised that it does not maintain medical records for detention centers that are not ICE Service Processing Centers. [77] at ¶ 37. The Chicago field office nevertheless searched Outlook using the three terms noted above but found no responsive records. *Id.* at ¶ 38. However, in response to a nearly identical request from Stevens regarding the Hudson County Jail, Request 24680, ICE's New York City and Newark field offices did identify responsive records. *Id.* at ¶¶ 30-32. Like the Kenosha facility, ERO initially advised that it does not maintain medical records for the Hudson County facility. *Id.*, Pineiro Decl. at ¶ 90. However, the New York City and Newark field offices conducted

searches of both their Outlook and office shared drives using more expansive search terms than the Chicago field office, including terms like "hospitalization," "hospital admission," "SIR Hudson" (for "significant incident report"), "medical expense," and "health care services." *Id.*

Stevens' two requests regarding the Kenosha County and Hudson County facilities are nearly identical and, in both cases, the ERO advised that ICE field offices do not maintain medical records for the facility. Yet the New York City and Newark field offices were able to identify responsive information while the Chicago field office was not. The Chicago field office must therefore expand its search to include both Outlook and the office's shared drive and utilize search terms reasonably likely to identify documents responsive to the entirety of Request 29171.

### iii. Request 59138 (August 23, 2018)

Request 59138 concerns records related to 14 ICE facilities including Jail Service Costs Reports ("JSCS"), a specific memorandum from February 7, 2013, grievance logs, and evaluations. Stevens objects that ICE did not search certain databases including the Suspension and Debarment Case Management System. [82] at 10. Although ICE did produce documents potentially responsive to Request 59138, Stevens objects that the documents are not the ones she was seeking. *Id.* Stevens also objects that ICE has not identified the search terms it used to search for subsections B and C of Request 59138. *Id.* at 10-11.

ICE explained that an Office of Acquisition Management ("OAQ") senior advisor contract specialist spent 48 hours searching the PRISM database using the

11

detention facility location codes for each of the 14 facilities Stevens identified in her request. [77], Pineiro Decl. at ¶ 83. OAQ identified 11,855 pages of potentially responsive documents which ICE produced to Stevens. *Id.* OAQ also explained that some of the contract-related documents Stevens requested were no longer available for multiple reasons including document retention timeframes, personal files of former employees no longer being available, and that ICE would not have copies of contracts with third party contractors. *Id.* ICE also explained that ERO conducted searches and identified responsive documents which were produced. *Id.*, Pineiro Decl. at ¶ 85. OPR also spent 8 hours searching the Joint Integrity Case Management system and identified responsive grievance logs. *Id.*, Pineiro Decl. at ¶ 86.

The Court finds that ICE's searches for JCSC's were reasonable. ICE explained the extensive time it committed to searching for responsive records, the locations searched, and the terms used to search. ICE also produced numerous potentially responsive records it identified. Stevens asserts that because she received JSCS's for facilities that she did not request, ICE therefore must possess the JSCS's she did request. However, the OAQ explained that certain contract related documents Stevens was seeking were no longer available. *See* [77], Pineiro Decl. at ¶ 83. Stevens' speculation that other ICE offices or databases may have the information she seeks is not enough to overcome the reasonableness of the extensive search ICE conducted. *See Rubman*, 800 F.3d at 387.

However, there are two issues with ICE's search for records responsive to Request 59138. One is that ICE did not provide the search terms ERO used to identify

responsive documents, therefore the Court cannot determine which subparts of Request 59138 that ERO was addressing and found responsive documents for. *See* [77], Pineiro Decl. at ¶¶ 84-85. Second, none of the search terms provided in the Pineiro declaration address subparts B or C of Stevens' request seeking the February 7, 2013 memorandum or communications related to the Berks County intergovernmental service agreements. *See e.g.*, [77], Pineiro Decl. at ¶¶ 81-86. Therefore, ICE must supplement its searches for documents responsive to Request 59138 subparts B and C.

### iv. Request 18634 (November 2019)

Request 18634 concerns communications regarding the Electronic Health Records System ("eHR"), including communication with Representative Lauren Underwood or her staff. Stevens argues that ICE did not search sufficient locations or use sufficient search terms. [82] at 11.

ICE tasked the Office of Congressional Relations ("OCR") and the ERO to conduct searches. [77], Pineiro Decl. at ¶¶ 59-61. Within ERO, the Chief of Health Information Technology who served as ICE's point of contact for the eHR project searched his Outlook for relevant communications using search terms related to eHR. *Id.* at ¶ 59. The OCR employees searched for their computers and Outlooks for terms related to Representative Underwood. *Id.* at ¶ 61.

The Court finds that ICE's searches were reasonable. The ERO employee was the ICE point of contact for the relevant eHR project and used broad search terms related to eHR. The OCR employees, because of their job responsibilities, would likely

have communications with a congressperson and used broad search terms likely to capture communications with Representative Underwood or her staff. Stevens' speculation that other ICE offices or databases may have the information she seeks is not enough to overcome the reasonableness of the extensive search ICE conducted. *See Rubman*, 800 F.3d at 387.

## II.     Adequacy of Production

If an agency identifies responsive documents, the agency "must release it unless the agency can carry its burden to establish that the material falls under one of the nine FOIA exemptions." *Stevens*, 20 F.4th at 344; § 552(b). Stevens argues that ICE has failed to carry its burden as to certain claimed exemptions and also argues that the representative sample at issue here demonstrates that ICE has improperly and overbroadly applied exemptions. [82] at 12-15.

### A. Exemptions

#### i.     Exemption 4 (Confidential Information)

Exemption 4 provides that FOIA does not apply to "trade secrets and commercial or financial information obtained from a person and privileged or confidential." § 552(b)(4). Information is considered "confidential" under Exemption 4 "where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 440 (2019).

Stevens argues that the documents at issue concern contracts which inform contractors that the contracts are subject to FOIA, however she provides no support

for her assertion. [82] at 14. ICE asserts that the redacted financial and commercial information is customarily treated as private by its owner, was "provided to the government under either an express or implied assurance of privacy," and that ICE does not customarily release the information to the public. *See e.g.*, [77], *Vaughn* Index. The commercial information at issue is largely cost information pertaining to private contractors and also a schematic drawing for construction of a detention facility. [77] at ¶¶ 63-67. In light of ICE's representations that the private contractors submitted the commercial information to the government with an assurance of privacy, the Court finds that ICE has justified its decision to withhold information pursuant to Exemption 4.

### ii.    Exemption 5 (Deliberative Process Privilege)

Exemption 5 provides that FOIA does not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." § 552(b)(5). Exemption 5 allows an agency to invoke the attorney client privilege, work product privilege, and deliberative process privilege over documents. *Enviro Tech Intern., Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374 (7th Cir. 2004).

The deliberative process privilege is not limited to formulation of official policies or adjudication, therefore a document "is predecisional if it is generated before an agency's final decision on a matter, whether that matter is official or not." *Stevens*, 20 F.4th at 345 (citing *U.S. Fish and Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021)). Therefore, agency deliberations about how to respond to media

inquiries and suggested talking points fall within Exemption 5. *Stevens v. U.S. Dept. of State*, No. 17 C 2494, 2020 WL 1330653, at *8 (N.D. Ill. Mar. 23, 2020), *aff'd,* 20 F.4th 337 (7th Cir. 2021) (quoting *Bloche v. Dep't of Def.*, 370 F. Supp. 3d 40, 51–52 (D.D.C. 2019)). ICE relied on Exemption 5 to partially withhold information on 6 pages of documents, all of which involve internal ICE discussions regarding how to respond to certain media inquiries. [77], Pineiro Decl. at ¶¶ 100-105. The Court finds that ICE has justified its decision to withhold information pursuant to the deliberate process privilege under Exemption 5.

ICE also applied Exemption 5 to one document on the basis of attorney client privilege. [77], Pineiro Decl. at ¶¶ 106-107. Stevens does not contest this assertion of attorney client privilege. The Court also finds that ICE has justified its withholdings under the attorney client privilege through its independent review of the *Vaughn* Index.

### iii. Exemption 3, 6, and 7

Exemption 3 shields information exempted by other statute. § 552(b)(3). Exemptions 6 and 7(C) shield information that would be an invasion of privacy. § 552(b)(6); § 552(b)(7)(C). And Exemption 7(E) shields law enforcement records that would disclose law enforcement techniques, procedures, or guidelines. § 552(b)(7)(E).

Stevens does not contest ICE's application of Exemptions 3, 6, and 7. The Court also finds that ICE has justified its withholdings under these exemptions through its independent review of the *Vaughn* Index.

### B. Adequacy of Sample

The parties agreed to identify a representative sample of 421 pages from ICE's productions to evaluate the appropriateness of ICE's redactions. [83], PSAF at ¶ 14. Through the evaluation process, ICE subsequently removed redactions from 32.5% of the 421-page sample due to redactions being made in error, inadvertently, or removing them as a matter of discretion. *Id.* at ¶ 15. Stevens argues that ICE's lifting of redactions from a significant percent of the sample documents shows that the rest of ICE's production may be over-redacted. [82] at 12-13. The Court agrees.

Where a FOIA case has a large volume of responsive documents, "representative sampling is an appropriate procedure to test an agency's FOIA exemptions claims." *Boundaoui v. Fed. Bureau of Investigation*, No. 17 CV 4782, 2024 WL 2019532, at *3 (N.D. Ill. May 3, 2024) (quoting *Shurtleff v. United States Env't Prot. Agency*, 991 F. Supp. 2d 1, 8 (D.D.C. 2013)). Representative sampling allows the parties to present a manageable number of items to the court through a *Vaughn* index for evaluation. *Id.* "If the sample is well-chosen, a court can, with some confidence, extrapolate its conclusions from the representative sample to a larger group of withheld materials." *Id.* (quoting *Shurtleff*, 991 F. Supp. at 8).

Here, the Court cannot confidently extrapolate its conclusions about the sample to the larger production. As explained above, the Court finds that ICE has carried its burden regarding the withholdings detailed in its *Vaughn* Index. But the *Vaughn* Index provided to the Court concerns a set of 421 pages that was "re-processed" and had almost a third of its redactions removed. The remaining documents, approximately 11,500 pages, have not been re-processed and may

similarly require a significant portion of its redactions removed. Therefore, ICE must re-process and re-evaluate its withholdings on the remainder of its production.

### C. Unusable Records

Stevens also raises an argument that a document ICE produced to her is unreadable. [82] at 8-9; *see* [83], Stevens Decl. at Ex. 2. ICE argues that the document is "plainly legible, albeit slightly blurry." The Court has reviewed the document in question, [83], Stevens Decl. at Ex. 2, and finds that the document is unreadable. The document is a PDF of a spreadsheet and displays text in an extremely small font size. Zooming in to make the text a readable size results in the blurriness that ICE describes as "slight." ICE must reproduce the document in Microsoft Excel spreadsheet format. *See* § 552(a)(3)(B) ("an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format"); *Rubman*, 800 F.3d at 389 ("agencies must be attentive not only to the *content* of the records sought by a FOIA request but also to their *form*"); [77] at ¶ 6 (Request 56530 stated "Please include the Excel spreadsheet").

### III.   Plaintiff's Motion for Summary Judgment

Stevens moves for summary judgement on Count I of the complaint. [82] at 2-5. Stevens argues that ICE failed to issue a final determination within the statutory deadline. [82] at 4; [87] at 1.

After an agency receives a FOIA request, the agency must "determine within 20 days … whether to comply with such request and shall immediately notify the

person making such request" of its determination. 5 U.S.C.A. § 552(a)(6)(A)(i). If the agency determines that it cannot comply with the request, the requester may file an administrative appeal of the adverse determination. § 552(a)(6)(A)(i)(III)(aa). If the agency determines that it will comply with the request, the agency's "records shall be made promptly available." § 552(a)(6)(C)(i). FOIA does not define "promptly." *White v. U.S. Dept. of J.*, 16 F.4th 539, 544 (7th Cir. 2021).

FOIA allows for limited judicial review of agency responses to FOIA requests. A federal court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." § 552(a)(4)(B). A reviewing federal court may also assess "reasonable attorney fees and other litigation costs reasonably incurred in any case … in which the complainant has substantially prevailed." § 552(a)(4)(E)(i). A FOIA requestor must exhaust administrative remedies before filing suit in federal court, but if the agency fails to respond to the FOIA request within the statutory time limit the requester has constructively exhausted. § 552(a)(6)(C)(i).

The FOIA statute "does not authorize courts to order any retroactive relief in favor of the plaintiff, apart from the possible recovery of attorney fees and costs" where an agency fulfills a FOIA request after a lawsuit is filed in federal court. *Stevens v. U.S. Dept. of Health and Human Services*, No. 22 C 5072, 2023 WL 6392407, at *3 (N.D. Ill. Oct. 2, 2023); *see also Walsh v. U.S. Dept. of Veterans Affairs*, 400 F.3d 535, 537 (7th Cir. 2005) ("FOIA's citizen suit provision provides only injunctive relief and has no remedy for cases such as this one in which an agency is

late in producing the requested records."); *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) ("[H]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform.").

Therefore, "once the government produces all the documents a plaintiff requests, her claim for relief under the FOIA becomes moot." *Walsh*, 400 F.3d at 536 (quoting *Anderson v. U.S. Dep't of Health & Human Servs.,* 3 F.3d 1383, 1384 (10th Cir.1993)). "Judicial authority to devise a FOIA remedy depends on a finding that an agency has (1) improperly; (2) withheld; (3) agency records." *White*, 16 F.4th 539 at 543 (internal quotations omitted) (citing *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)).

Stevens argues that she is entitled to summary judgment because ICE failed to issue a final determination in response to her requests within the 20-day timeframe required by § 552(a)(6)(A)(i). [82] at 3-5; [87]. The FOIA statute provides that if an agency fails to make a determination within the 20-day timeframe, the requester is deemed to have constructively exhausted and may file suit in federal court. *See* § 552(a)(6)(C)(i). Stevens has already filed her federal lawsuit, therefore there is no other relief she is entitled to for the alleged failure to issue a determination within 20 days. Stevens' motion for summary judgment as to Count I is denied.

## CONCLUSION

For the stated reasons, Plaintiff's motion for summary judgment [82] is denied. Defendant ICE's motion for summary judgment [75] is denied because its searches

20

related to Request 29171 and Request 59138 were inadequate and there is a genuine dispute as to ICE's withholdings. Further, ICE must re-process and re-evaluate its withholdings on the portion of its production that was not subject to the sampling.

As to the PDF of a spreadsheet that displays text in an extremely small font size and is described as not readable, ICE is to produce that document as required by this Order within 30 days. As to Request 29171 and Request 59138, ICE is to conduct further searches consistent with this Order within 90 days of this Order. Finally, as to the reprocessing of the production not previously subject to sampling, ICE is to conduct that reprocessing and reproduction in batches of 1,500 pages every 30 days. This production is to be completed by October 30, 2025. Parties are to file a status report by April 30, 2025.

E N T E R:

Dated: February 6, 2025

_____
MARY M. ROWLAND
United States District Judge